R. Scott Taylor, OSB No. 74324
Clinton L. Tapper, OSB No. 084883
400 E 2nd Ave., Suite 103
Eugene, OR  97401
Tel (541) 485-1511
Fax (541) 246-2424
Scott@taylortapper.com
Clinton@taylortapper.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| SABINO VELOZ,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN,<br><br>                    Defendant. | CASE NO.:  6:17-cv-382-AA<br><br>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br>**ORAL ARGUMENT REQUESTED** |

### I.  CERTIFICATION

Pursuant to L.R. 7-1, the parties made a good faith effort through telephone conferences to resolve the dispute and have been unable to do so.

### II. MOTION

Plaintiff moves this court for Partial Summary Judgment on the issue of liability for the water damage to Plaintiff's structure damages and associated debris removal, emergency repairs, and lost rents related to this Loss.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Page 1 of 15
Taylor & Tapper
400 E 2nd Avenue, Suite 103
Eugene, OR  97401
Ph: (541) 485–1511 / Fax: (541) 264–4866

## III. FACTS

1. Plaintiff was and is the owner of real property held for rent at 3048 Whitbeck Blvd. Eugene, Oregon 97405 (the Premises). (Dkt. #1 at 1 ¶ 2; Dkt. #4 at 1 ¶ 2).

2. Plaintiff was insured by Foremost under a Landlord Dwelling Policy, policy number 006712297 (the Policy). (Dkt. #1 at 2 ¶¶ 5-6; Dkt. #4 at 2 ¶ 8-9).

3. The Policy provided all risk coverage with respect to structure damages. (See Exhibit 1 at 17).

4. Any "direct, sudden and accidental physical loss" is an Insured Peril with respect to Plaintiff's structure coverage. (See Exhibit 1 at 17).

5. The Policy provided for debris removal expense when an Insured Peril that applies to the insured property deposited the debris. (See Exhibit 1 at 16).

6. The Policy provided coverage for the contents only with respect to individually named Insured Perils. (See Exhibit 1 at 17).

7. On September 4, 2016, an EWEB water main located on a hill behind Plaintiff's premises burst. (Dkt. #1 at 2 ¶ 7; Dkt. #4 at ¶ 10).

8. The bursting water main released a substantial amount of water above the surface of the ground. (See Dkt. #1 at 2 ¶ 7; Dkt. #4 at 2 ¶ 10; Exhibit 2).

9. This water cascaded down the hill behind Plaintiff's premises and entered Plaintiff's premises causing substantial damage. (Dkt. #1 at 2 ¶ 7; Exhibit 3; Dkt. 4 at 2 ¶ 10).

10. Defendant conducted an investigation of the loss and made an on-site visit to Plaintiff's property.

11. On or about September 16, 2017, Defendant's adjuster, James Bailey, informed Plaintiff that "[t]he policy does not cover releases of water that start off the premises" and that "the policy language was very clear." (Exhibit 3). Mr. Bailey cited the specific Policy language to Plaintiff under subsection # 15 of Insured Perils:

But we do not insure loss:

\*\*\*

b. Caused by accidental discharge (of water) or overflow which

occurs off your premises.

(Exhibit 3).

12. On September 16, 2017, Defendant sent a letter to Plaintiff denying coverage for the loss

in its entirety and citing allegedly applicable Policy provisions excluding coverage.

(Exhibit 4).

13. On March 7, 2017, Plaintiff filed suit against Defendant for insurance benefits as a result

of the loss, seeking compensation for damages to the structure, debris removal expense,

mitigation expense, and lost rents. (Dkt. #1 at 4 ¶ 24).

14. On May 22, 2017, Defendant answered the Complaint and cited 3 provisions of the

Policy allegedly foreclosing liability for Plaintiff's structure damages: (1) loss caused by

discharge of water from off the premises, (2) loss caused by flood water and/or surface

water, and (3) loss caused by action of any person group, organization, or government

body (Insured Peril #15, Exclusion #7(a), and Exclusion #17). (Dkt. #4 at 3-5 ¶ 24;

Exhibit 1 at 19; Exhibit 1 at 20; Exhibit 1 at 21).

## IV. STANDARDS

Summary Judgment is appropriate where there is no genuine issue of material fact and

the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving

party must initially show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for

trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  A material

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Page 3 of 15
Taylor & Tapper
400 E 2nd Avenue, Suite 103
Eugene, OR  97401
Ph: (541) 485–1511 / Fax: (541) 264–4866

fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id.

## V. ARGUMENT

1. **Introduction: Liability for Plaintiff's Structure Damages**

With regard to structure coverage, the policy is all risk - covering as an Insured Peril "direct, sudden and accidental physical loss to the property described in Coverage A - Dwelling and Coverage B - Other Structures unless the loss is excluded elsewhere in this Policy." (Exhibit 1 at 17). Therefore, coverage is provided for structure damages unless an applicable exclusion applies.

With regard to contents coverage, only damages caused by individually named Insured Perils (also called Named Perils) are covered by the Policy. (See Exhibit 1 at 17). Here, Plaintiff is not pursuing any damages to contents, so the individually named Insured Perils are not relevant to the court's analysis of liability on the structure.

Defendant cites three provisions of the Policy that allegedly foreclose coverage: one individually named Insured Peril (#15) and two exclusions (#7(a) and #17). (Dkt. #4 at 3-5 ¶ 24; Exhibit 1 at 19; Exhibit 1 at 20; Exhibit 1 at 21). For the following reasons, the only provision

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Page 4 of 15
Taylor & Tapper
400 E 2nd Avenue, Suite 103
Eugene, OR  97401
Ph: (541) 485–1511 / Fax: (541) 264–4866

necessary to the court's analysis of Defendant's liability on the structure is Exclusion #7(a) losses caused by "flood water" or "surface water."

First, Defendant has admitted, through its designated person most knowledgeable regarding this loss, that its affirmative defense #1(a) (Insured Peril #15: excluding damages caused by accidental discharge or overflow of water which occurs off an insured premises) is not a basis for excluding damages to the structure and only excludes coverage for the contents.[1] (Exhibit 5/Foremost 30(b)(6) Depo 12:8-13:6).

Second, Defendant has admitted, through its designated person most knowledgeable regarding this loss, that its affirmative defense #1(c) (Exclusion #17: excluding losses caused by the conduct, act failure to act or decision of any person, group, organization or governmental body) does not exclude coverage for the structure standing alone. (See Exhibit 5/Foremost 30(b)(6) Depo 13:24-14:11). Exclusion #17 "applies only if there is another cause of loss that is excluded by this policy." (Exhibit 1 at 21). Defendant has conceded that if Exclusion #17 were applicable to Plaintiff's Loss, on its own, independent of other named exclusions; there would be coverage for Plaintiff's damages to the structure.  (Exhibit 5/Foremost 30(b)(6) Depo 13:24-14:11).

Defendant 's affirmative defense #1(b) is the only other exclusion cited by Defendant allegedly foreclosing liability for damages to Plaintiff's structure (Exclusion #7(a): excluding losses caused by flood water or surface water). (Dkt. #4 at 4; see Exhibit 1 at 19-20). Therefore,

---

[1] Plaintiff only makes a claim against Defendant for coverage on the structure (and associated coverages, such as additional living expenses (ALE), debris removal, and mitigation) and Insured Peril #15 only applies to contents.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

if Plaintiff's loss was not caused by "flood water" or "surface water," there is no other cited

exclusion to be paired with Defendant's affirmative defense #3 (Exclusion #17: excluding losses

caused by the conduct, act failure to act or decision of any person, group, organization or

governmental body) and Defendant is liable for the damages to Plaintiff's structure.

 Whether or not Plaintiff's loss was caused by "flood water" or "surface water," is a

question of law that requires the court's assistance and decision.

 *a)* ***Plaintiff's Loss was Not Caused by "Flood Water" or "Surface water"***

 Plaintiff's structure damages are covered under the Policy. Defendant claims water from

an EWEB burst water main is excluded as "flood water" or "surface water" under Exclusion

#7(a):

> **SECTION 1 - Exclusions**
> We do not insure loss caused directly or indirectly by any of the
> following regardless of any other cause or event contributing
> concurrently or in any sequence to the loss:
>
> *****
>  7. Loss caused by:
>
>   a. Flood water, surface water, waves, tidal water,
>   tidal waves, storm surge, tsunami or overflow of a
>   body of water or spray from any of these whether or
>   not driven by wind;
>
> *****
> This exclusion applies whether or not there was widespread
> damage and whether or not it was caused by human activity or an
> act of nature.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Page 6 of 15
Taylor & Tapper
400 E 2nd Avenue, Suite 103
Eugene, OR  97401
Ph: (541) 485–1511 / Fax: (541) 264–4866

(Dkt. #4 at 4; Exhibit 1 at 19-20). This key exclusion hinges on the answer to a simple question: was Plaintiff's loss caused by "flood water" or "surface water."[2] If not, there is coverage for Plaintiff's structure. Neither "flood water" nor "surface water" are defined by the Policy, necessitating the court's assistance in interpreting the Policy Language.

In Oregon, the interpretation of an insurance policy is a question of law. Holloway v. Republic Indem. Co. of Am., 341 Or. 642, 649-50 (2006). A court interprets an insurance contract from the perspective of an "ordinary purchaser of insurance." Totten v. New York Life Ins. Co., 298 Or. 765, 771 (1985). This interpretation is done to "ascertain the intention of the parties" as evidenced by "the terms and conditions of the insurance policy." Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Oregon, 313 Or. 464, 469 (1992) (citing ORS 742.016 ("Every contract of insurance shall be construed according to the terms and conditions of the policy")).

Oregon law provides a three-part test for determining the parties' intended meaning. First, the court considers "whether the phrase in question has a plain meaning, i.e., whether it 'is susceptible to only one plausible interpretation.'" Holloway, 147 P.3d at 333. If there is only one plausible interpretation, this interpretation is applied and there is no need for any further analysis. Id. If there is more than one possible meaning, for step two the court must then consider "the phrase in light of the particular context in which that phrase is used in the policy and the broader context of the policy as a whole." Id. at 334. Finally, if any ambiguity remains, step three

---

[2] Defendant's Answer denies that water "flooded the lower level of the single –family residence on the Premises." (Compare Dkt. #1 at 2 ¶ 7 with Dkt. #4 at 2 ¶ 10).

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Page 7 of 15
Taylor & Tapper
400 E 2nd Avenue, Suite 103
Eugene, OR  97401
Ph: (541) 485–1511 / Fax: (541) 264–4866

requires a court to resolve "any reasonable doubt as to the intended meaning of such a term" against the insurer who drafted the policy. Id.

   b)  *Plain Meaning: Water from a Burst Water Main is Neither "Flood Water" nor "Surface Water"*

 A plain reading of the Policy language concludes that water damage caused by a burst water main is not "flood water" or "surface water." The common dictionary definitions of "flood water" and "surface water" support Plaintiff's interpretation that water damage caused from a bursting water main is neither "flood water" or "surface water" as those terms are commonly understood. As used in the Policy, the terms "flood water" and "surface water" are nouns describing particular types of water, which even Defendant's 30(b)(6) witness assumes are all natural sources of water. (See Exhibit 1 at 19-20; see also Exhibit 5/Foremost 30(b)(6) Depo 22:16-23:14). A plain reading of the terms, without even looking at the context of the terms in the Policy, limits their application to natural sources of water.

   Merriam Webster's Dictionary Unabridged defines "floodwater" as "the water of a flood."[3] Flood is further defined as

> 1 *archaic* **:** a body of moving water (as a river or stream) especially when large
> 2 *a* **:** the flowing in of the tide *b* **:** the highest point of a tide
> 3 *a* **:** a rising and overflowing of a body of water that covers land not usually under water *b (1)* **:** an outpouring of considerable extent *(2)* **:** a great downpour
> 4 **:** the element water
> 5 *a* **:** a great stream of something (as light or lava) that flows in a steady course *b* **:** a large quantity widely diffused.[4]

---

[3] Merriam-Webster. Webster's Third New International Dictionary Unabridged (Kindle Locations 397069-397070). Merriam-Webster. Kindle Edition.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Page 8 of 15
Taylor & Tapper
400 E 2nd Avenue, Suite 103
Eugene, OR  97401
Ph: (541) 485–1511 / Fax: (541) 264–4866

Similarly, Merriam Webster's Dictionary Unabridged defines "surface water" as "natural water that has not penetrated much below the surface of the ground: drainage water."[5] Defendant's 30(b)(6) witness acknowledges that it would be reasonable for an insured to look to a dictionary definitions for undefined terms in the Policy, that it would be reasonable for an insured to think "surface water" meant the dictionary's definition, and that water from a water main is not "surface water" using Merriam Webster's definition. (Exhibit5/Foremost's 30(b)(6) Depo. 21:25-22:3; 22:4-10; 19:15-20:6).

Legal definitions of the terms similarly support Plaintiff's interpretation. Black's Law Dictionary, 5th Edition, defines "floodwater" as: "water that escapes a watercourse in large volumes and flows over adjoining property in no regular channel." Black's Law Dictionary, 5th Edition, defines "surface water" as: "1. Water lying on the surface of the earth but not forming part of a watercourse or lake * Surface water most commonly derives from rain, springs, or melting snow. 2. See diffused surface water."

None of the definitions of "surface water" support Defendant's interpretation. Surface water is clearly limited to natural sources of water. With respect to "flood water," the definitions overwhelmingly support Plaintiff's interpretation. As a matter of law, the plain meaning of the

---

[4] Merriam-Webster. Webster's Third New International Dictionary Unabridged (Kindle Locations 396956-396973). Merriam-Webster. Kindle Edition.

[5] Merriam-Webster. Webster's Third New International Dictionary Unabridged (Kindle Locations 993359-993362). Merriam-Webster. Kindle Edition.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Page 9 of 15
Taylor & Tapper
400 E 2nd Avenue, Suite 103
Eugene, OR  97401
Ph: (541) 485–1511 / Fax: (541) 264–4866

terms "flood water" and "surface water" in Exclusion #7(a) are not applicable to damage caused

by water from a burst water main.

> c) **Context of the Policy: The Terms "Flood Water" and "Surface Water" Only Apply to Natural Sources of Water**

If the court were to determine that either the term "flood water" or "surface water" were

susceptible to two plain meanings, a contextual reading of the Policy clarifies that Exclusion

#7(a) does not apply to Plaintiff's Loss.

The Policy language at issue is not a case of first impression for this court. In Hatley v.

Truck Ins. Exchange, the Supreme Court of Oregon analyzed what the term "surface water"

meant in the context of an insurance policy exclusion with nearly identical language:

> Exclusions
> This policy does not insure against:
> * * *
> C. Loss caused by, resulting from, contributed to or aggravated by any of
> the following:
> * * *
> > "2. flood, surface water, waves, tidal water or tidal wave,
> > overflow of streams or other bodies of water, or spray from any of
> > the foregoing, all whether driven by wind or not;

261 Ore. 606, 619 (Or. 1972). The Oregon Supreme Court held:

> The term "surface water," particularly when used in conjunction with
> flood, waves, and tidal water, was intended to mean water "diffused over
> the surface of the ground, derived from falling rains or melting snows."
> *Price v. Oregon Railroad Co.*, 47 Or 350, 358, 83 P 843 (1906). We have
> been cited to no cases either in the field of property insurance or that of
> water law in which water from any but a natural source is held to be
> surface water. In the context in which the term is used in defendant's
> policy we hold that its meaning is so limited.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Page 10 of 15
Taylor & Tapper
400 E 2nd Avenue, Suite 103
Eugene, OR 97401
Ph: (541) 485–1511 / Fax: (541) 264–4866

Hatley v. Truck Ins. Exch., 261 Ore. 622, 624 (Or. 1972).

Here, just as in Hatley, the terms "flood water" and "surface water" are used in conjunction with other natural water sources: tidal waves, tidal water, tsunami, storm surge, and overflow of a body of water or spray from any of those. The Oregon Supreme Court's reasoning for limiting the application of the term "surface water" to natural water sources extends to the term "flood water." Accordingly, there is only one reasonable interpretation of the terms "flood water" and "surface water" given the context of the Policy, neither include losses caused by water from a burst water main. The court should grant Plaintiff's Partial Motion for Summary Judgment with respect to Defendant's liability for structure damages.

2. **Defendant is Liable for Additional Coverages under the Policy**

If the court determines there is coverage for Plaintiff's structure damages, there is also coverage for debris removal, loss of rents, and mitigation expense under the Policy, because the cause of the loss is not excluded elsewhere in the Policy. Accordingly, the court should grant Plaintiff's Partial Motion for Summary Judgment with respect to Defendant's liability for debris removal expenses, loss of rents, and mitigation.

a. *There is Coverage for Debris Removal Expense*

The language on the additional coverage for debris removal provides:

**Your Additional Coverages**

1. **Debris Removal.** We will pay the actual, reasonable, and
   necessary cost for the removal of debris of insured property,

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Page 11 of 15
Taylor & Tapper
400 E 2nd Avenue, Suite 103
Eugene, OR  97401
Ph: (541) 485–1511 / Fax: (541) 264–4866

> other than trees, when deposited by an Insured Peril that
> applies to the insured property….

(Exhibit 1 at 16). Here, the debris removal expenses were for the insured property of the

structure. Under Section I - Insured Perils the Policy provides:

> **SECTION 1 – Insured Perils**
> We insure risk of direct, sudden and accidental physical loss to the
> property described in Coverage A - Dwelling and Coverage B - Other
> Structures unless the loss is excluded elsewhere in this Policy….

(Exhibit 1 at 17). Therefore, any direct, sudden and accidental physical loss to Coverage A

property (the structure) that is not excluded elsewhere in the Policy is an Insured Peril with

regard to the structure. (See Exhibit 1 at 17).

Reading the additional debris removal coverage together with the Insured Perils language

applicable to Coverage A - Structures, there is coverage under the Policy for removal of debris of

the structure that experienced a direct, sudden and accidental physical loss as a result of the burst

water main.

### b.  *There is Coverage for Loss of Rents*

The language on Coverage D – Loss of Rents provides:

> **Coverage D – Loss of Rents**
> If an insured loss occurs at the dwelling described on the Declarations
> Page, we will pay for your loss of normal rents resulting from that
> insured loss while the dwelling is not fit to live in or use, less charges and
> expenses that do not continue during that time.

(Exhibit 1 at 16). Here, the damage to Plaintiff's structure caused by EWEB's bursting water

main is an insured loss. This loss is not excluded elsewhere in the Policy and the insured loss

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Page 12 of 15
Taylor & Tapper
400 E 2nd Avenue, Suite 103
Eugene, OR  97401
Ph: (541) 485–1511 / Fax: (541) 264–4866

rendered approximately half of Plaintiff's structure uninhabitable. To the extent Plaintiff lost

normal rents as a result of this insured loss, Defendant is liable for Plaintiff's lost rents.

### c. There is Coverage for Mitigation Expense

The Policy provides for additional coverage for Emergency Repairs After Loss

(mitigation). The Policy provides:

> **Your Additional Coverages**
>
> 2. **Emergency Repairs After Loss.** We will pay any actual, reasonable
>    and necessary expenses for emergency repairs incurred in protecting
>    your insured property from further damage if the damage was caused
>    by an Insured Peril. . .

(Exhibit 1 at 16). Here, the mitigation cost to have ServPro remove and dry out the water that

entered the premises was to protect the insured property (the structure) from additional water

damage after the loss. Under Section I - Insured Perils the Policy provides:

> <u>SECTION 1 – Insured Perils</u>
> We insure risk of direct, sudden and accidental physical loss to the
> property described in Coverage A - Dwelling and Coverage B - Other
> Structures unless the loss is excluded elsewhere in this Policy….

(Exhibit 1 at 17). Therefore, any direct, sudden and accidental physical loss to Coverage A

property (the structure) that is not excluded elsewhere in the Policy is an Insured Peril with

regard to the structure. (<u>See</u> Exhibit 1 at 17).

Reading the additional coverage for Emergency Repairs After Loss together with the

Insured Perils language applicable to Coverage A - Structures, there is coverage under the Policy

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Page 13 of 15
Taylor & Tapper
400 E 2nd Avenue, Suite 103
Eugene, OR 97401
Ph: (541) 485–1511 / Fax: (541) 264–4866

for emergency repairs after the loss (mitigation) of the structure that experienced a direct, sudden and accidental physical loss as a result of the burst water main.

## VI. CONCLUSION

For the aforementioned reasons, Plaintiff respectfully requests the court grant his Partial Motion for Summary Judgment with respect to Defendant's liability under the Policy for structure damages and associated debris removal, emergency repairs, and lost rents related to this Loss.

DATED: 10/20/17

**TAYLOR & TAPPER**

s/ Nickolaus Gower

Nickolaus Gower, OSB 143274
nick@taylortapper.com

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Page 14 of 15
Taylor & Tapper
400 E 2nd Avenue, Suite 103
Eugene, OR  97401
Ph: (541) 485–1511 / Fax: (541) 264–4866

## CERTIFICATE OF SERVICE

The undersigned certifies that on the below date, a true and correct copy of the foregoing

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
- Nickolaus Gower's Declaration in Support
- Exhibits 1 through 4
- Exhibit 5/Foremost's 30(b)(6) Deposition Excerpts

was served by deposit into the CM/ECF system, facsimile, and/or First Class Mail on:

Ron Clark
Bullivant Houser Bailey PC
888 SW 5th Ave Ste 300
Portland OR  97204
FAX - 503 295-0915

ron.clark@bullivant.com

DATED: 10/20/17

**TAYLOR & TAPPER**

s/ Nickolaus Gower

Nickolaus Gower, OSB 143274
nick@taylortapper.com

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT