IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SABINO VELOZ,

    Plaintiff,

v.

FOREMOST INSURANCE COMPANY
GRAND RAPIDS, MICHIGAN,

    Defendant.

Case No. 6:17-cv-00382-AA
**OPINION AND ORDER**

AIKEN, District Judge:

In this diversity action, plaintiff Sabino Veloz moves for partial summary judgment against defendant Foremost Insurance Company for damages relating to the flooding of plaintiff's property. Defendant cross-moves for summary judgment, citing three provisions from the parties' insurance policy ("the policy") that purportedly exclude the flood damage from coverage. For the reasons set forth below, plaintiff's motion is granted in part and denied in part. Defendant's motion is also granted in part and denied in part.

## BACKGROUND

The following facts are undisputed. Plaintiff owns a rental property in Eugene, Oregon. On September 4, 2016, a water main owned and regulated by the Eugene Water and Electric

1 – OPINION AND ORDER

Board ("EWEB"), located on a hill behind plaintiff's house, burst. The water flowed downhill onto plaintiff's land and caused damage to the residence. Plaintiff filed a claim with defendant. On September 16, 2017, after an inspection of the damage, defendant denied plaintiff's claim. Defendant's denial letter cited three provisions of the policy: Insured Peril subsection 15 and Exclusions 7 and 17. Plaintiff then filed this action, asserting claims for breach of contract and breach of the duty of good faith and fair dealing.

## STANDARDS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "is relevant to an element of a claim or defense and [its] existence might affect the outcome of the suit." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630. "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

When cross-motions for summary judgment are presented, the court must "review the evidence properly submitted in support of [each] motion to determine whether it present[s] a disputed issue of material fact[.]" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*,

2 – OPINION AND ORDER

249 F.3d 1132, 1135 (9th Cir. 2001). The court must evaluate each motion independently on its own merits. *See id.* at 1136.

The interpretation of an insurance policy is a matter of law. *Emp'rs Ins. of Wausau v. Tektronix, Inc.*, 156 P.3d 105, 116 (Or. Ct. App. 2007). The court's objective in construing an insurance contract is to determine the intent of the parties. *Hoffman Constr. Co. of Alaska v. Fred S. James & Co.*, 836 P.2d 703, 706 (Or. 1992). To make that determination, the court uses a three step process. *Id.* at 706-07. The first step is to examine the text of the policy to determine whether it is ambiguous, that is, whether it is susceptible to more than one plausible interpretation. *Tualatin Valley Hous. v. Truck Ins. Exch.*, 144 P.3d 991, 993 (Or. Ct. App. 2006). The court will apply any definitions that are supplied by the policy itself and will otherwise presume that words have their plain, ordinary meanings. *Id.* If a term has only one plausible interpretation, it is interpreted in accordance with that unambiguous meaning. *Andres v. Am. Standard Ins. Co.*, 134 P.3d 1061, 1063 (citing *Hoffman*, 836 P.2d at 706). If the wording of the policy is susceptible to more than one plausible interpretation, the court must examine the disputed terms in the context of the policy as a whole. *Id.* As a last resort, the court resolves ambiguity by construing the term against the drafter—generally, the insurance company. *Hoffman*, 836 P.2d at 706-07. In the context of insurance contracts, courts determine plain meaning from the perspective of a reasonable insured. *Id.*

The insured bears the initial burden of proving that a loss is covered under an insurance policy, while the insurer bears the burden of proving that a loss is excluded from coverage. *Wausau*, 156 P.3d at 119. It is also the insured's burden to establish that a claim is within an exception to an exclusion. *Id.* at 121-22.

## DISCUSSION

Plaintiff moves for partial summary judgment and defendant cross-moves for summary judgment. Plaintiff contends that defendant breached the policy by denying coverage for damage to the structure as well as by denying coverage for mitigative repairs, lost rent, and debris removal. Defendant asserts that the water damage to the structure falls within two policy exclusions—7 and 17—and that there is no coverage for mitigative repairs, rent, and debris removal because no Insured Peril caused the damage.

I.  *Structural Damage*

The pertinent sections of Exclusions 7 and 17 state

We do not insure loss caused directly or indirectly by any of the following regardless of any other cause of event contributing concurrently or in any sequence to the loss:

. . .

7. Loss caused by:

    a. Flood Water, surface water, waves, tidal water, tidal waves, storm surge, tsunami or overflow of a body of water or spray from any of these whether or not driven by wind . . . .

This exclusion applies whether or not there was widespread damage and whether or not it was caused by a human activity or an act of nature.

. . .

17. Loss caused by:

    a. The conduct, act, failure to act or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent or without fault.

    b. A defect, weakness, inadequacy, fault or unsoundness in:

        (1) Planning, zoning, development, surveying, siting;

4 – OPINION AND ORDER

> (2) Design, specifications, workmanship, construction, grading, compaction during construction;
>
> (3) Materials used in construction or repair; or
>
> (4) Maintenance;
>
> of any property, including but not limited to, land, structures, or improvements of any kinds, whether on or off your premises.
>
> . . .
>
> This exclusion applies only if there is another cause of loss that is excluded by this policy.

Gower Decl. Ex. 1 at 20 & 21 (emphasis omitted).

Defendant contends that Exclusion 7(a) encompasses water from a man-made source, such as a burst water main. Conversely, Plaintiff asserts that Exclusion 7(a) applies only to natural water sources and so does not exclude coverage for damage caused by EWEB's burst water main. I agree with plaintiff.

Because there is no explicit definition of "surface water" or "flood water" within the confines of the policy, I must ask whether the terms "surface water" or "flood water" are prone to multiple interpretations. "Surface water" is defined in Merriam-Webster's Dictionary as: "natural water that has not penetrated much below the surface of the ground: drainage water." Surface Water, https://www.merriam-webster.com/dictionary/surface%20water (last visited Jan. 23, 2018). Black's Law Dictionary defines "surface water" as: "1. Water lying on the surface of the earth but not forming part of a watercourse of lake. Surface water most commonly derives from rain, springs, or melting snow." Black's Law Dictionary 1825 (10th ed. 2014).

"Floodwater" is described as "the water of a flood" by Merriam-Webster's Dictionary. Floodwater, https://www.merriam-webster.com/dictionary/floodwater (last visited Jan. 23, 2018). Further, "flood" is defined as "1a: a rising and overflowing of a body of water especially onto

5 – OPINION AND ORDER

normally dry land . . . 2: the flowing in of a tide 3: an overwhelming quantity or volume . . .[.]" Flood, https://www.merriam-webster.com/dictionary/flood (last visited Jan. 17, 2018). Lastly, Black's Law Dictionary defines "flood water" as "water that escapes a watercourse in large volumes and flows over adjoining property in no regular channel . . . [.]" Black's Law Dictionary 1825 (10th ed. 2014).

In *Hatley v. Truck Insurance Exchange*, 494 P.2d 426 (Or. 1972), the Oregon Supreme Court discussed the term "surface water" in the context of an insurance policy exclusion. The disputed claim involved damage to home after vandals placed a soaker hose near the plaintiff's property and turned it on full blast; the water flowed into the building, damaging rolls of carpet which were stored on the floor. *Id.* at 427-28. The policy provision in *Hatley* was similar to the one at issue in the present case. It read

Exclusions

This policy does not insure against:

. . .

C. Loss caused by, resulting from, contributed to or aggravated by any of the following:

. . .

2. flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not.

*Hatley v. Truck Ins. Exch.*, 494 P.2d 426, 432 (Or. 1972). The court held that the water from the hose was not "surface water" within the meaning of the policy, rejecting defendant's argument that the exclusion barred coverage. *Id.* at 432.

Denying the insurer's petition for rehearing, the court elaborated that

> [t]he term "surface water," particularly when used in conjunction with flood, waves, and tidal water, was intended to mean water "diffused over the surface of the ground, derived from falling rains or melting snows." *Price v. Oregon R.R. Co.*, 83 P. 843 (1906). We have been cited to no cases either in the field of property insurance or that of water law in which water from any but a natural source is held to be surface water.

*Hatley v. Truck Ins. Exch.*, 495 P.2d 1196, 1197 (Or. 1972) (parallel citation omitted).

I see no basis to distinguish Exclusion 7 from the exclusion at issue in *Hatley*. Therefore, I hold that the terms "surface water" and "flood water" unambiguously refer to natural water sources and that no reasonable insured would interpret those terms to refer to water that escapes from a man-made source such as a water main. This interpretation is further supported by the fact that the terms in controversy here are listed alongside other natural water sources – "waves, tidal water, tidal waves, storm surge, tsunami" – and thus do not suggest any meaning beyond naturally occurring water. Gower Decl. Ex. 1 at 20.

In its motion for summary judgment, defendant directs the Court's attention to the final provision of Exclusion 7, which states: "This exclusion applies whether or not there was widespread damage and *whether or not it was caused by a human activity* or an act of nature." Gower Decl. Ex. 1 at 20 (emphasis added). Defendant offers this proviso to the Court as evidence that "surface water" unambiguously includes water from a burst water main, arguing that flood or surface water may be both "caused" by human activity (*e.g.*, water mains) and "caused" by an act of nature (*e.g.*, rivers), but I am not convinced. The question is what the pronoun "it" references: the water source or the water damage. I read this provision to say "whether or not [*the damage to the residence*] was caused by a human activity," not, as defendant would have it, "whether or not [*the water*] was caused by a human activity." *Id.*

Defendant also submits *Citi Gas Convenience, Inc. v. Utica Mutual Insurance Co.*, 2016 WL 492474 (E.D. Pa. Feb 9, 2016), as an illustration of a similar insurance dispute. In that case,

7 – OPINION AND ORDER

which also concerned damage from a burst water main, the court found the term "surface water" unambiguously included man-made sources of water. *Citi Gas,* WL 492474 at *4. However, that case is distinguishable based on differing policy language. The appropriate sections of that policy provided

> B. Water
>
> 1. Flood, surface water, waves (included tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);
>
> . . .
>
> This exclusion applies *regardless of whether any of the above, in Paragraphs 1. through 5., is caused by an act of nature or is otherwise caused.*

*Id.* at *1 (emphasis added).

Unlike defendant's policy, the policy in *Citi Gas* at least arguably linked the word "caused" to the source of the water by using the phrase "any of the above" and specifically including a reference to Paragraph 1. Conversely, as noted above, the "it" in defendant's policy refers to structural damage. Plaintiff is entitled to summary judgment with respect to this exclusion. The structural damage from the burst water main was not excluded from coverage under Exclusion 7 and defendant breached the contract by denying coverage.[1]

II. *Emergency Repair and Debris Removal*

After the water main burst, plaintiff contacted ServiceMaster "to complete emergency repairs to the structure (water mitigation) and limited debris removal." Veloz Decl. ¶ 4. ServiceMaster left fans and dehumidifiers at the property for two weeks. Plaintiff asserts he spent $10,170.15 on debris removal and emergency repairs. Compl. ¶ 24D. The section of the

---

[1] Because Exclusion 7 does not apply, any further analysis on the applicability of Exclusion 17 is inconsequential, as Exclusion 17 only comes into effect if another relevant exclusion applies. Gower Decl. Ex. 1 at 21.

8 – OPINION AND ORDER

policy entitled "Your Additional Coverages" provides coverage for exactly those types of subsequent remedial measures under certain circumstances. However, for the reasons below, mitigative repairs and debris removal are not covered under the contract in this particular instance.

The policy provision on debris removal explains: "We will pay the actual, reasonable and necessary cost for the removal of debris of insured property, other than trees, from your premises when deposited by an Insured Peril that applies to the insured property." Gower Decl. Ex. 1 at 16 (emphasis omitted). Similarly, the provision on emergency repairs states: "We will pay any actual, reasonable and necessary expenses for emergency repairs incurred in protecting your insured property from further damage if the damage was caused by an Insured Peril." *Id.*

The Insured Perils section of the policy begins by stating: "[w]e insure risk of direct, sudden and accidental physical loss to the property described in Coverage A – Dwelling and Coverage B – Other Structures unless the loss is excluded elsewhere in this policy." *Id.* at 17. The next paragraph states "[w]e insure risk of direct, sudden and accidental physical loss to property insured by Coverage C – Personal Property. The loss must . . . be caused by any of the following perils unless the loss is excluded elsewhere in this policy." *Id.* The policy then lists and defines sixteen Insured Perils. *Id.* at 17-19.

Plaintiff argues the provision explaining Coverages A and B makes clear his mitigative repair and debris removal costs are covered because he is making a structure damage claim and not a personal property claim. That argument is misguided and would require me to ignore the specific policy provisions on debris removal and emergency repairs, which require the source of the damage to be caused by an Insured Peril. A reasonable reader can understand that the purpose of capitalizing "Insured Peril" in the debris removal and emergency repair provisions is

to reference the list of Insured Perils in the policy. Certainly, the provisions surrounding this issue could have been organized more artfully. However, the wording in "Your Additional Coverages" unambiguously refers to *Insured Perils* as a term of art within the contract. If I were to accept plaintiff's argument, it would render superfluous the express reference to "Insured Perils" under "Debris Removal" and "Emergency Repairs After Loss." Such a reading runs contrary to longstanding principles of contract interpretation under Oregon law. *See I-L Logging Co. v. Mfrs. & Wholesalers Indem. Exch.*, 275 P.2d 226, 231 (Or. 1954) ("Each word is deemed to have some meaning, and none should be assumed to be superfluous. All portions of a policy should be considered in construing it.")

In order for plaintiff's mitigative repairs and debris removal to be covered, therefore, the source of the damage would have to be one of the enumerated options in the list of Insured Perils. In other words, as relevant here, the list of Insured Perils serves two purposes: it limits the circumstances under which a contents claim may be made and *separately* limits the circumstances under which emergency repairs and debris removal are covered. Here, it is undisputed that the cause of the damage is EWEB's burst water main. As defendant highlights in its motion, only subsection 15 of the Insured Perils "comes close to applying to the facts of this loss." Def.'s Mot. Summ. J. at 13. That subsection states:

> 15. Discharge, release or overflow of water or steam from plumbing, heating, or air conditioning systems, automatic fire protective sprinkler systems or domestic appliances.
>
> But we do not insure loss:
>
> . . .
>
> b. Caused by accidental discharge or overflow which occurs off your premises[.]

Gower Decl. Ex. 1 at 19 (emphasis omitted). Assuming, *arguendo*, that the water main in question is considered "plumbing" in the first paragraph of subsection 15, coverage is still excluded, because the water that damaged plaintiff's structure was an "accidental discharge or overflow" that occurred off plaintiff's property. *Id.*

Defendant is entitled to summary judgment with respect to the additional coverages of debris removal and emergency repairs; there is no coverage for those costs under the policy.

III. *Loss of Rents*

Plaintiff's Complaint alleges $19,200 for lost rents. Compl. ¶ 24C. The applicable provision of the policy states:

> If an insured loss occurs at the dwelling . . . , we will pay for your loss of normal rents resulting from that insured loss while the dwelling is not fit to live in or use, less charges and expenses that do not continue during that time.
>
> We will pay loss of normal rents only for the shortest time needed to make the dwelling habitable.

Gower Decl. Ex. 1 at 16. This provision authorizes coverage for lost rents if the structure is at any point inhabitable. However, nothing in the record establishes how lost rents were calculated. Plaintiff has the burden of proof on this issue as well as the burden of identifying evidence in the record that shows lack of a question of material fact; he has not, at this point, carried either burden. Plaintiff's complaint does not serve the same purpose as an affidavit or exhibit; it cannot be relied upon to support his motion. *See United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir. 1995) ("[A]ssertions in . . . pleadings are not evidence."); *S. Pac. Co. v. Conway*, 115 F.2d 746, 750 (9th Cir. 1940) ("[T]he office of a pleading is to state ultimate facts and not evidence of such facts."). This question of damages cannot be resolved at the summary judgment stage.

IV.  *Breach of the Duty of Good Faith and Fair Dealing* [2]

Plaintiff also asserts that defendant breached the implied duty of good faith and fair dealing ("duty of good faith"). Specifically, plaintiff alleges defendant is liable for

> a. Misrepresenting facts or policy provisions in settling claims;
>
> b. Refusing to pay claims without conducting a reasonable investigation based on all available information;
>
> c. Not attempting, in good faith, to promptly and equitably settle claims in which liability has become reasonably clear;
>
> d. Compelling claimants to initiate litigation to recover amounts due by offering substantially less than amounts ultimately recovered in actions brought by such claimants[.]

Compl. ¶ 29.

In Oregon, there is "a duty of good faith and fair dealing with respect to all contracts to facilitate performance and enforcement of the contract where it is consistent with and in furtherance of the agreed-upon terms of the contract or where it effectuates the reasonable contractual expectations of the parties." *Swenson v. Legacy Health Sys.*, 9 P.3d 145, 149 (Or. Ct. App. 2000). The heart of each party's good faith and fair dealing obligation is the duty "to perform the contract, including exercising any discretion that the contract provides, in a way that will effectuate the objectively reasonable contractual expectations of the parties." *Pollock v. D.R. Horton, Inc.-Portland*, 77 P.3d 1120, 1127 (Or. Ct. App 2003). The claims of breach of contract and breach of the duty of good faith are distinct, and success on a breach of good faith

---

[2] Defendant suggests that plaintiff cannot succeed on this claim because "Oregon law does not allow for tort liability in the first-party context." Def.'s Mot. Summ. J. at 14-15. This argument is misguided. Under Oregon law, in a first-party insurance dispute, a "breach of the duty of good faith and fair dealing . . . 'sounds in contract.'" *Brockway v. Allstate Prop. & Cas. Ins. Co.*, 391 P.3d 871, 879 (Or. Ct. App. 2017) (quoting *Emp'rs' Fire Ins. v. Love It Ice Cream*, 670 P.2d 160, 165 (Or. Ct. App. 1983)). Further, "plaintiff['s] claim for breach of the duty of good faith is a claim for breach of the insurance contract[.]" *Id.*

12 – OPINION AND ORDER

claim does not require breach of the express or implied terms of the contract. *See Morrow v. Red Shield Ins. Co.*, 159 P.3d 384, 388-89 (Or. Ct. App. 2007) (holding that the insurer was entitled to summary judgment on the plaintiffs' breach of contract claim, but allowing a breach of the duty of good faith and fair dealing claim predicated on the same facts to proceed to trial).

Oregon courts have not provided much clarity in describing which actions constitute a breach of the duty of good faith. While it is clear that not every breach of the duty of good faith claim requires a breach of contract, it is not clear whether every breach of contract is necessarily also a breach of the duty of good faith. It does not appear that this question has been confronted by the Oregon appellate courts, this Court, or the Ninth Circuit, so I must look to law from other states, mindful of the inherent differences in state law claims.

In California, for example,

> [i]f the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claims is actually stated.

*Careau & Co. v. Sec. Bus. Credit, Inc.*, 272 Cal. Rptr. 387, 400 (Cal. Ct. App. 1990). Similarly, under Florida law, the duty of good faith "relate[s] to the performance of [the] express term[s] of the contract." *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So.2d 573, 574 (Fla. Dist. Ct. App. 1998). "Good faith and fair dealing is an interpreting, gap-filling doctrine which applies only when the propriety of a contracting party's conduct is not resolved by the terms of the contract." *Stallworth v. Hartford Ins. Co.*, 2006 WL 2711597, *5 (N.D. Fla. Sept. 19, 2005). Lastly, in order to breach the duty of good faith, the Supreme Court of Wyoming requires the plaintiff to show: "(1) the absence of any reasonable basis for denying a claim for benefits; and (2) the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 825 (Wyo. 1994). Together,

13 – OPINION AND ORDER

these cases show that most states require something beyond mere breach to state a breach of the duty of good faith claim.

It does not appear that Oregon law requires bad faith. Nonetheless, even in the absence of a bad faith requirement, it seems unlikely that every breach of contract claim is a *per se* breach of the duty of good faith. The Arizona Supreme Court has explained that "[f]ailure to perform the express covenant to pay the claim is not the *sine qua non* for an action for the breach of the implied covenant of good faith and fair dealing." *Rawlings v. Arizona*, 726 P.2d 565, 573 (Ariz. 1986) (emphasis in original).[3] "As long as [the insurer] acts honestly, on adequate information and does not place paramount importance on its own interests, it should not be held liable because of a good faith mistake in performance or judgment." *Id.* I find this reasoning persuasive. The law should not allow every breach of contract, even those accidental, inadvertent, or caused by honest mistake to deliver to plaintiff a successful additional claim for the breach of the duty of good faith.

On the specific facts of this case, the claim for the breach of the duty of good faith cannot survive a motion for summary judgment. There likely are cases where an insurer's interpretation of policy language is so patently unreasonable that denial alone could support a breach of good faith claim, but that is because an insurer's adoption of a truly beyond-the-pale interpretation of contractual language is evidence that the insurer was willing to disregard the objectively reasonable contractual expectations of the insured. Here, however, defendant adopted a plausible yet ultimately incorrect reading of the contract language. Under such circumstances, a breach of the duty of good faith claim requires evidence of something beyond the mere breach of contract to proceed. Plaintiff has identified no such evidence here. Although plaintiff made

---

[3] In other words, "[n]ot every breach of an express covenant in an insurance contract is a breach of the covenant of good faith and fair dealing." *Id.*

14 – OPINION AND ORDER

some allegations of bad faith in the complaint, pleadings are not evidence, and there is insufficient evidence in the summary judgment record to support those allegations. Moreover, there is no evidence in the record of fraud, misrepresentation, or any other indicia of bad faith on the part of defendant. Defendant is therefore entitled to summary judgment on the good faith claim.

## CONCLUSION

Plaintiff's Motion for Partial Summary Judgment (doc. 10) is GRANTED with respect to the question of coverage for structural damage and Exclusions 7 and 17; the motion is DENIED with respect to the request for damages for emergency repairs, debris removal, and lost rents. Defendant's Motion for Summary Judgment (doc. 8) is GRANTED with respect to the damages for emergency repairs and debris removal, GRANTED with respect to the breach of the duty of good faith and fair dealing, and DENIED in all other respects. The request for oral argument is DENIED as unnecessary.

If interested in scheduling a settlement conference, the parties may contact my courtroom deputy, Cathy Kramer, at (541) 431-4102 or Cathy_Kramer@ord.uscourt.gov.

IT IS SO ORDERED.

Dated this 25th day of January 2018.

_____
Ann Aiken
United States District Judge